UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**DONNA WIMBERLY**  CIVIL ACTION NO. 16-1419

**VERSUS**

**COMPASS HEALTH, LLC.**

## COMPLAINT

NOW INTO COURT, comes Donna Wimberly, an individual residing in the State of Louisiana, and files this Complaint against Compass Health, LLC, a Louisiana limited liability company conducting business in the State of Louisiana and the Western District of Louisiana, as follows:

### JURISDICTION, VENUE AND PARTIES

1. This action involves application of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq. This court has jurisdiction of this action pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1331.

2. The claims asserted in this action arose within this district and the discrimination and damage alleged occurred in this district. Venue of this action is proper pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1391.

3. Mrs. Wimberly is, and at all times material hereto was, a resident of the State of Louisiana, residing in St. Landry Parish, but was employed by the defendant at its location in Mamou in Evangeline Parish.

4. Made defendant herein is Compass Health, LLC ("Compass"), a Louisiana limited liability company with its principal place of business in Acadia Parish, State of Louisiana, conducting business in various locations within the State of Louisiana.

## FACTUAL ALLEGATIONS

5. Mrs. Wimberly was an employee of Compass from December 5, 2014 until July 18, 2016.

6. On July 18, 2016, Mrs. Wimberly's employment was terminated.

7. At the time of her termination, Mrs. Wimberly's direct supervisor was Kirk Perron. Mr. Perron's office is located at Jennings Senior Care Hospital in Jennings, Louisiana.

8. On April 25, 2016, Mrs. Wimberly commenced FMLA leave for the birth of a child. Her return date was scheduled for July 18, 2016.

9. At the commencement of FMLA leave, Mrs. Wimberly had worked for Compass in a full-time capacity for more than one year.

10. At the termination of her employment, Mrs. Wimberly was employed as a Program Director at the Compass Behavioral Center in Mamou, Louisiana.

11. At the time Mrs. Wimberly commenced leave on April 25, 2016, Compass has more than 50 employees within a 75 miles radius of the Mamou facility.

12. Mrs. Wimberly's child was born on May 2, 2016.

13. During Mrs. Wimberly's FMLA leave, Compass contacted her several times by phone, text and email.

14. On June 14, 2016, during her FMLA leave, Mr. Perron left Mrs. Wimberly a message requesting a meeting.

15. Later on June 14, 2016, Mrs. Wimberly returned Mr. Perron's call. Mrs. Wimberly returned Mr. Perron's call the same day.

16. During the June 14, 2016 telephone call, Mr. Perron told Mrs. Wimberly that Compass was looking to make some changes and that he wanted to offer her a position as Social Services Director at the Church Point inpatient facility. Mrs. Wimberly informed Mr. Perron that she was not interested in the Social Services Director position. Mr. Perron again suggested a face-to-face meeting to discuss the issue. Mrs. Wimberly informed him that she would give it some thought and let him know.

17. The duties of the Social Service Director at Church Point are different from the duties of the Program Director at Mamou.

18. The duties of the Social Service Director position at Church Point included conducting assessments and screenings, providing counseling and contributing the treatment planning.

19. The Social Services Director position at the Church Point facility was a clinical position which would require Mrs. Wimberly to work with patients.

20. As Program Director at Mamou, Mrs. Wimberly was not engaged in clinical work such as conducting assessments and counseling.

21. On June 22, 2016, during her FMLA leave, Mr. Perron emailed Mrs. Wimberly to ask if she wanted to talk about the change of her position by phone.

22. On June 24, 2016, Mrs. Wimberly responded that she would be available to meet with Mr. Perron on June 27, 2016 in Eunice. He responded that he was unavailable.

23. Also on June 24, 2016, Mr. Perron apparently held a meeting with the staff at Mamou and informed them that Mrs. Wimberly would not be returning to Mamou.

24. On several occasions, Mrs. Wimberly asked Mr. Perron to meet with her about his refusal to return her to her pre-FMLA leave position. Mr. Perron did not respond.

25. On July 14, 2016, Mrs. Wimberly called Mr. Perron to discuss her return from FMLA leave. Mrs. Wimberly asked why she was being transferred to the Social Services Director position at Church Point and was told that change was needed. When Mrs. Wimberly indicated that she wanted to return to her position as Program Director in Mamou, Mr. Perron told her that the new position was "still a position in the company" but admitted that her duties would change.

26. In the conversation on July 14, 2016, Mrs. Wimberly asked Mr. Perron if she would be terminated if she did not accept the Social Services Director position at Church Point. Mr. Perron replied "yes." Mrs. Wimberly was advised to contact human resources with any questions.

27. On July 15, 2016, after leaving a message with Cassie Lacombe at human resources the day before, Mrs. Wimberly sent an email to Ms. Lacombe advising that she was scheduled to return from FMLA leave on July 18, 2016 and intended to report to her position in Mamou. Mrs. Wimberly also left a voice mail for Ms. Lacombe. Ms. Lacombe responded by text message that she was trying to reach Mr. Perron "to see what the plan is."

28. On July 16, 2016, Mrs. Wimberly received a text message from Mr. Perron directing her to report to Church Point upon her return from FMLA leave on July 18, 2016.

29. On July 18, 2016, to avoid being insubordinate, Mrs. Wimberly reported to Church Point as directed. No one from management was there to receive her or provide her any direction. There was no place for her. After arriving, Mrs. Wimberly called Ms. Lacombe and reiterated that she was not interested in the Church Point position and wanted to be restored to

the position at Mamou which she held prior to FMLA leave. Ms. Lacombe responded that Mr. Perron had told her otherwise.

30. That morning, after being excused from the office for a patient meeting, Mrs. Wimberly went to her car to pump breast milk for her child (because there was no place for her to sit much less pump).

31. That same morning. while in her car, Mrs. Wimberly again called Ms. Lacombe to follow up on their prior conversation. She was told by Ms. Lacombe that there was no other position for her in the company.

32. During the conversation with Ms. Lacombe, Mrs. Wimberly asked, "so, I am terminated from the company?" Ms. Lacombe replied "yes." Mrs. Wimberly then asked "since I am already in my car and I don't have anything in the building do I need to leave?" Ms. Lacombe responded "that is probably the best course of action."

33. On July 19, 2016, after her employment had been terminated, Mrs. Wimberly received a voicemail from Ms. Lacombe asking for a meeting. On July 22, 2016, Mrs. Wimberly returned Ms. Lacombe's call. Ms. Lacombe indicated that Mark Cullen and Aimee Monaghan wanted to meet and "discuss the entire situation" with her.

34. Frustrated with having her position taken away during her FMLA leave and hurt by the termination of her employment on the day of her return from FMLA leave, Mrs. Wimberly elected not to meet with Compass.

35. Upon her return from FMLA leave, Mrs. Wimberly was informed that her position as Program Director at Mamou was no longer available and the only position available for her was as Social Service Director in Church Point. Although the Social Service Director

position was offered with similar pay and benefits, the position came with different duties at a different location.

36. When Mrs. Wimberly advised Compass that she was not interested in the Social Service Director position and that she wanted to be restored to her pre-FMLA position, her employment was terminated.

37. Mrs. Wimberly submits that Compass failed to comply with the applicable statutes and regulations, and instead, performed these actions in such a way as to discriminate against Mrs. Wimberly by reassigning her to a position which was not the same or equivalent as defined by the FMLA and applicable regulations.

38. Mrs. Wimberly submits that Compass, by failing to restore her to the same or an equivalent position, as defined by the FMLA and applicable regulations, interfered with her rights under the FMLA.

39. After the termination of her employment, Mrs. Wimberly applied for unemployment compensation. Despite the numerous emails, text messages and telephone calls with Compass representatives prior to the termination of her employment, Compass represented to the Louisiana Workforce Commission that Mrs. Wimberly failed to report to her job after being released by her doctor and that she refused the offer of similar employment without discussing her dissatisfaction with her employer or supervisor.

40. The misrepresentations to the Louisiana Workforce Commission have created further hardship for Mrs. Wimberly.

## **CLAIM UNDER THE FAMILY AND MEDICAL LEAVE ACT**

41. Mrs. Wimberly realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 40.

42. Compass qualifies as an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611(4), and that Burton is an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2611(2).

43. Mrs. Wimberly submits that she was entitled to FMLA leave pursuant to 29 U.S.C. § 2612(a)(1)(A) and commenced such leave on April 25, 2016.

44. Under 29 U.S.C. § 2614(a)(1), an employee returning from FMLA leave is entitled to be restored to the same or equivalent position with the employer.

45. Under 29 C.F.R. § 825.215, an "equivalent position" under FMLA is "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility and authority."

46. Mrs. Wimberly was entitled to restoration to her position or to an equivalent position upon her return from FMLA leave.

47. Despite informing Compass on several occasions of her desire to return to her pre-FMLA Program Director position in Mamou and disinterest in the non-equivalent Social Service Director position at Church Point, Mrs. Wimberly was denied restoration to the same or equivalent position as required by FMLA upon her return from FMLA leave.

48. As the result of the termination of Mrs. Wimberly's employment, she has incurred lost wages and benefits within the meaning of the FMLA.

49. Under 29 U.S.C. § 2617(a), Mrs. Wimberly seeks damages including, without limitation, lost wages, back pay from the effective date of termination, lost employment benefits from the date of termination, loss of front pay, legal interest and liquidated damages.

50. Pursuant to 29 U.S.C. § 2617(a)(3), Mrs. Wimberly is also entitled to reasonable attorney fees, expert witness fees and all costs of these proceedings.

51. Mrs. Wimberly prays for a trial by jury.

WHEREFORE, after due proceedings, Donna Wimberly prays for judgment in her favor, and against Compass Health, LLC, for any and all damages and relief available under 29 U.S.C. § 2611, et seq., and specifically 29 U.S.C. § 2617, including but not limited to compensatory damages, lost wages, legal interest, liquidated damages, attorney fees, expert witness fees and all costs of these proceedings, and for such other and further relief available under the law and as this Court deems just and proper.

Respectfully submitted:

ROEDEL, PARSONS, KOCH, BLACHE,
 BALHOFF & McCOLLISTER, A L.C.
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809-7652
Phone: (225) 929-7033  Fax:(225) 928-4925
Email: CJones@RoedelParsons.com
       SMorris@RoedelParsons.com
       JKyles@RoedelParsons.com

/s/ Carlton Jones, III
CARLTON JONES, III (#25732), T.A.
SHERI M. MORRIS (#20937)
JOHANNA A. POSADA (#36260)